UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUAN A. LABOY,

                Plaintiff,

    v.

ONTARIO COUNTY, NEW YORK;
OFFICE OF THE SHERIFF,
COUNTY OF ONTARIO;
SHERIFF PHILIP C. PROVERO,
individually and in his official capacity;
DEPUTY REBECCA EDINGTON;
individually and in her official capacity;
DEPUTY NATHAN BOWERMAN,
individually and in his official capacity; and
DEPUTY PATRICK FITZGERALD,
individually and in his official capacity,

                Defendants.

**DECISION AND ORDER**

06:14-CV-6086 EAW

## INTRODUCTION

Plaintiff Juan A. Laboy ("Plaintiff") brought this action against Ontario County, the Ontario County Sheriff's Office, Sheriff Philip C. Provero ("Provero"), Deputy Rebecca Edington ("Edington"), Deputy Nathan Bowerman ("Bowerman"), and Deputy Patrick Fitzgerald ("Fitzgerald") (collectively, the "Defendants" or the "County Defendants"), pursuant to 42 U.S.C. § 1983, alleging malicious prosecution, excessive use of force and unlawful arrest, and deliberately indifferent policies, practices, customs, training, and supervision. (Dkt. 1). Presently before the Court is Defendants' motion to

- 1 -

dismiss (Dkt. 14) and Plaintiff's motion for partial summary judgment (Dkt. 28). For the following reasons, judgment is granted in favor of Defendants and Plaintiff's complaint is dismissed.

## BACKGROUND

The following facts are based on the allegations contained in Plaintiff's complaint. (Dkt. 1). On August 1, 2010, at 11:15 a.m., the Ontario County Sheriff's Department received a request to respond to Plaintiff's residence located at 2171 State Route 14 in the town of Phelps, New York, to take a report regarding "family issues." (*Id.* at ¶¶ 20-21). Upon arriving at Plaintiff's residence, a sheriff's deputy took a written complaint from Jomaira Rojas, who spoke no English and communicated with the deputies through an interpreter, for harassment in the second degree, which is allegedly a "non-criminal violation-level offense." (*Id.* at ¶¶ 22-23). Ms. Rojas accused her common-law husband, Plaintiff, of pushing her during an argument. (*Id.* at ¶ 24). Plaintiff was not present when the deputies took the written complaint, but the deputies asked Ms. Rojas to contact the Sheriff's Department if her husband came home. (*Id.* at ¶ 26). The deputies did not obtain a warrant for Plaintiff's arrest. (*Id.* at ¶ 28).

Later that day, at approximately 6:45 p.m., defendants Edington, Bowerman, and Fitzgerald were dispatched to Plaintiff's home. (*Id.* at ¶¶ 32, 35). When defendant Edington arrived, Ms. Rojas was standing outside of the residence (*id.* at ¶ 37), but defendant Edington was unable to communicate with her in Spanish (*id.* at ¶¶ 38-40). Defendant Edington attempted to enter Plaintiff's house by asking Ms. Rojas to open the door to the house (*id.* at ¶¶ 41, 49), and Ms. Rojas complied (*id.* at ¶ 50). After defendant

Edington entered the house, she drew her firearm and yelled for Plaintiff to come out because he was under arrest. (*Id.* at ¶ 51). Plaintiff was in bed at the time. (*Id.* at ¶ 52). After defendant Edington announced herself five times, she received a response of "fuck you" from the back of Plaintiff's home. (*Id.* at ¶ 53). Plaintiff alleges that deputy Edington approached Plaintiff's bedroom and kicked open the door, and pointed her firearm at Plaintiff. (*Id.* at ¶¶ 55, 57). Defendant Edington then ordered Plaintiff to stand up because he was under arrest. (*Id.* at ¶ 58). Plaintiff complied by standing up, placing his hands behind his back, and told defendant Edington to "point [the gun] away from me or I will take it." (*Id.* at ¶ 59). Defendant Edington also allegedly took out her taser and pointed it at Plaintiff, who was wearing only his underwear. (*Id.* at ¶ 60). Plaintiff then allowed defendant Edington to handcuff him, and defendant Edington allegedly "slammed [Plaintiff] against the wall repeatedly." (*Id.* at ¶ 61).

After Plaintiff fell to the ground, deputy Edington performed an "iron wrist drag," by picking Plaintiff up from the ground by his arm, which caused him to sustain scrapes, bruising, and swelling. (*Id.* at ¶¶ 62-63). Defendant Edington also allegedly employed "knee strikes" against Plaintiff's legs, and a "pressure tactic" called a "mandibular angle," by pressing her hand against Plaintiff's head, neck, and throat to control his body. (*Id.* at ¶¶ 64-65). Defendant Edington also allegedly pushed Plaintiff against the wall, causing his face to hit a nail that was protruding from the wall, a gash on his face, and his head to jerk back and strike defendant Edington on the nose. (*Id.* at ¶ 66). Defendant Edington then allegedly turned Plaintiff's body around, kicked him in the groin, and pushed him onto the bed. (*Id.* at ¶ 67). Deputy Edington then "dragged" Plaintiff off of

the bed by the handcuffs and kneeled on his back until defendants Bowerman and Fitzgerald arrived on the scene. (*Id.* at ¶ 68).

Defendants Bowerman and Fitzgerald took physical custody of Plaintiff and locked him in the back seat of their police cruiser. (*Id.* at ¶ 69). Plaintiff alleges that the deputies refused Plaintiff's request to put his pants on, and brought him outside in his underwear. (*Id.* at ¶ 70). Plaintiff also alleges that when he was seated in the police cruiser, defendant Edington gave him the middle finger and said "fuck you." (*Id.* at ¶ 71).

Deputies Edington, Bowerman, and Fitzgerald allegedly "completed official accusatory paperwork and criminal complaints" against Plaintiff and gave sworn testimony against Plaintiff accusing him of assault in the second degree, obstructing governmental administration in the second degree, and resisting arrest. (*Id.* at ¶ 72). Plaintiff alleges that he was indicted and tried in Ontario County for these alleged crimes (*id.* at ¶ 73), and the indictment allegedly accused him of forcibly resisting his lawful arrest and harassment in the second degree (*id.* at ¶ 74). Deputy Edington testified against Plaintiff at trial, where Plaintiff was represented by Jason M. Housel, Esq. (*Id.* at ¶¶ 85, 87). On February 18, 2011, the jury convicted Plaintiff of the charges against him, and Plaintiff was sentenced to six years incarceration, plus three years of post-release supervision on the assault charge, together with concurrent one-year terms of incarceration on the remaining charges. (*Id.* at ¶¶ 96-97).

Plaintiff appealed his conviction on the ground that there was insufficient evidence of the crimes against him, because there was no proof that the arresting officers had

engaged in a lawful arrest. (*Id.* at ¶ 98). On February 14, 2014, the Appellate Division, Fourth Department, reversed Plaintiff's conviction on the grounds of legal insufficiency, because Plaintiff's arrest was not authorized. (*Id.* at ¶¶ 99-100). Plaintiff was released from prison on February 20, 2014, after spending six months in county jail, followed by three years in state prison. (*Id.* at ¶ 101). Plaintiff alleges that while he was in prison, he suffered physical, mental, and emotional injuries, loss of reputation, loss of income, and other monetary and non-monetary damages. (*Id.* at ¶ 102).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on February 24, 2014, against Defendants Ontario County, the Office of the Sheriff, Sheriff Provero, deputies Edington, Bowerman, and Fitzgerald, and Jason M. Housel, Esq. ("Housel"). (Dkt. 1). On June 16, 2014, defendant Housel filed a motion to dismiss for lack of jurisdiction and failure to state a claim. (Dkt. 5). On October 24, 2014, defendant Housel and Plaintiff filed a notice of settlement (Dkt. 25), and the case against defendant Housel was subsequently dismissed with prejudice (Dkt. 26).

The County Defendants filed a motion to dismiss on July 25, 2014. (Dkt. 14). Plaintiff responded on September 2, 2014, by filing a "motion for miscellaneous relief," in which he sought partial summary judgment on the issue of probable cause to arrest, qualified immunity, and his *Monell* claim, and opposed Defendants' motion to dismiss. (Dkt. 16). Defendants moved to strike Plaintiff's motion for miscellaneous relief because his memorandum of law exceeded the 25-page limit imposed by L. R. Civ. P. 7(a)(2)(C) and because he filed certain exhibits one day after his deadline for responding to the

motion to dismiss. (Dkt. 21). The Court granted Defendants' motion to strike on October 28, 2014, and directed Plaintiff to refile his motion for miscellaneous relief as two separate filings within ten business days. (Dkt. 27).

Plaintiff re-filed his motion for partial summary judgment and his opposition to Defendants' motion to dismiss on November 7, 2014. (Dkt. 28, 29). Defendants filed a reply to their motion to dismiss on December 4, 2014 (Dkt. 34), and responded to Plaintiff's motion for partial summary judgment on December 5, 2014 (Dkt. 35). Plaintiff filed a reply to his motion for partial summary judgment on December 30, 2014. (Dkt. 38). The Court heard oral argument on both motions on February 23, 2015, and reserved decision. (Dkt. 40). The Court also permitted Plaintiff to file a supplemental brief in support of his contention that his summary judgment motion sought relief on both his false arrest and malicious prosecution claims. (*Id.*). Plaintiff filed his supplemental brief on March 3, 2015 (Dkt. 42), and Defendants responded on March 10, 2015 (Dkt. 44).

## DISCUSSION

### I. Legal Standard

#### A. Motion to Dismiss

"'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A

court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

### B.    Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

### C.    Plaintiff's Submissions

Defendants object to various procedural errors with Plaintiff's motion for partial summary judgment, as follows: (1) Plaintiff's statement of facts does not comply with L. R. Civ. P. 56(a)(3) because the statement is not supported by citations to the record; (2) Plaintiff submitted his exhibits as a combined appendix; (3) Plaintiff's memorandum of law incorporates argument from other submissions; (4) Plaintiff violated L. R. Civ. P. 7(a)(4), by providing supporting material beyond the portions of documents pertinent to his motion; and (5) Plaintiff's affidavit contains legal argument, in violation of L. R. Civ. P. 7(a)(3).  (Dkt. 35-6 at 1-2).  Defendants also object to Plaintiff's requests to file an amended complaint and a late notice of claim.  (*Id.* at 6-8).

After the Court granted Defendants' motion to strike Plaintiff's initial "motion for miscellaneous relief" (Dkt. 27), Plaintiff timely refiled his motion and his opposition to Defendants' motion to dismiss as two separate filings, with a combined appendix, so that his arguments with respect to each motion were clear (Dkt. 28-32). Although the Court had directed Plaintiff to file copies of any exhibits relating to more than one motion with each set of motion papers (Dkt. 27 at 8), the Court will accept Plaintiff's combined appendix of exhibits for efficiency purposes. Similarly, the Court will accept Plaintiff's motion, although it improperly incorporates argument from other submissions and is supported by material beyond the portions of documents pertinent to his motion. Plaintiff's "incorporation" of arguments by reference to other documents allows him to circumvent L. R. Civ. P. 7(a)(2)(c), which limits memoranda of law to 25 pages. Nonetheless, the Court will consider the entirety of Plaintiff's submissions. Accordingly, in deciding the instant motion, the Court considers: (1) Plaintiff's summary judgment submissions (Dkt. 28, 38); (2) Plaintiff's submissions filed in response to Defendants' motion to dismiss (Dkt. 29); (3) the entirety of Plaintiff's exhibits, which includes Exhibits A-K (Dkt. 30-32); and (4) Plaintiff's post-argument submission (Dkt. 42).

Pursuant to L. R. Civ. P. 56(a)(3), each statement contained in a Rule 56 Statement of Facts must be followed by a specific citation to admissible evidence. Plaintiff has neglected to provide citations to the record in his Rule 56 statement of facts. (*See* Dkt. 28-1). Plaintiff's failure to include citations to the record in his statement of facts is inexcusable. Nevertheless, the Court in its discretion will not reject Plaintiff's

Case 6:14-cv-06086-EAW   Document 45   Filed 05/04/15   Page 10 of 28


submission. *See Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, No. 13 Civ. 835 (ER) (FM), 2014 U.S. Dist. LEXIS 128175, at *11-12 (E.D.N.Y. Sept. 11, 2014).

With respect to Plaintiff's proposed amended complaint, the Court has reviewed it and finds that any amendment would be futile. The amendments address only the filing of a notice of claim (Dkt. 32-3 at ¶¶ 20-22), and additional allegations regarding municipal liability (*Id.* at ¶¶ 88-89). As discussed further at Point II(D) of this Decision and Order, Plaintiff's claims of municipal liability are insufficient, and he has failed to allege any underlying constitutional violation. *See Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) ("leave to amend a complaint may be denied when amendment would be futile").

With respect to the notice of claim issue, Defendants argue that Plaintiff's state law claims are barred because Plaintiff failed to file a notice of claim, as required by New York's General Municipal Law. (Dkt. 14-4 at 13-14). Plaintiff argues that he is not required to file a notice of claim because he brought his claims pursuant federal law, rather than state law. (Dkt. 29-2 at 18). Because Plaintiff has sued his claims pursuant to 42 U.S.C. § 1983 (*see* Dkt. 1 at ¶¶ 16, 103-157), he was not required to serve a notice of claim. *See Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 349 (E.D.N.Y. 2013); *see also Day v. Moscow*, 955 F.2d 807, 814 (2d Cir. 1992) (state notice of claim requirements are "not applicable to § 1983 suits brought in federal court").

Finally, Plaintiff contends that he has moved for summary judgment on not only his false arrest claim, but also his claim for malicious prosecution. (Dkt. 42). Plaintiff's notice of motion states that he is moving for partial summary judgment on the issue of

"probable cause to arrest." (Dkt. 28 at 1). Plaintiff argues that because probable cause is relevant to both his false arrest and malicious prosecution claims, his motion covers both of those claims, rather than only his false arrest claim. (Dkt. 42 at 4). The Court recognizes that the issue of probable cause is relevant to both a false arrest and malicious prosecution claim. However, "[a]lthough probable cause is a defense to both false arrest and malicious prosecution claims, the probable cause analysis for each claim demands a slightly different analysis." *Walker v. City of Utica*, No. 6:12-CV-01587 (MAD/TWD), 2015 U.S. Dist. LEXIS 28196, at *15 n.3 (N.D.N.Y. Mar. 9, 2015). In any event, because whether Plaintiff's motion for summary judgment covers both his false arrest and malicious prosecution claim does not affect the Court's analysis with regard to the Court's resolution of the pending motions, the Court will consider Plaintiff's malicious prosecution claim under both the Rule 12(b)(6) and Rule 56 standards.

## II.   Defendants' Motion to Dismiss

### A.   Plaintiff's Claims Against Defendants in Their Official Capacities and the Ontario County Sheriff's Department are Dismissed

#### 1.   Plaintiff's Claims Against Defendants in Their Official Capacities

Plaintiff sues defendants Provero, Edington, Bowerman, and Fitzgerald in their official and individual capacities. (Dkt. 1). Defendants argue that the real party in interest in an official capacity suit is the governmental entity and not the named official, and therefore the official capacity claims must be dismissed. (Dkt. 14-4 at 10). Plaintiff does not contest this assertion.

"[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)); *see also 5 Borough Pawn, LLC. v. City of N.Y.*, 640 F. Supp. 2d 268, 297 (S.D.N.Y. 2009) (dismissing plaintiff's claim against the defendant in his official capacity as duplicative of the plaintiff's claim against the city).   Accordingly, Plaintiff's claims against defendants Provero, Edington, Bowerman, and Fitzgerald in their official capacities are dismissed.

### 2.   Plaintiff's Claims Against the Ontario County Sheriff's Department

Plaintiff also sues the Ontario County Sheriff's Department (Dkt. 1), which Defendants argue must be dismissed because it is merely an administrative arm of the County and does not have the legal capacity to be sued (Dkt. 14-4 at 14).   Plaintiff does not contest this assertion.

The Ontario County Sheriff's Department must be dismissed because a department is "merely an administrative arm of the County, and it therefore lacks the capacity to be sued." *Colpoys v. Cnty. of Erie*, No. 12-CV-908S, 2013 U.S. Dist. LEXIS 139653, at *6-7 (W.D.N.Y. Sept. 27, 2013) (dismissing plaintiff's claims against the Erie County Sheriff's Department); *see also McKenzie v. Cnty. of Erie*, No. 12-CV-912S, 2013 U.S. Dist. LEXIS 135967, at *5-6 (W.D.N.Y. Sept. 23, 2013) (dismissing claims against various Erie County departments); *Tulloch v. Erie Cnty. Holding Ctr.*, No. 10-CV-0207S, 2010 U.S. Dist. LEXIS 64349, at *5 (W.D.N.Y. June 24, 2010) (dismissing claims against the Erie County Holding Center because it is "merely an arm of the County, and

does not have a legal identity separate and apart from the County and thus cannot be sued. . . .").   Accordingly, any claim Plaintiff has alleged against the Ontario County Sheriff's Department is dismissed.

**B.    Plaintiff's Excessive Use of Force Claim is Time Barred**

Plaintiff's second cause of action contains both a claim for excessive use of force and false arrest.   Defendants argue that Plaintiff's excessive use of force claim is barred by the three-year statute of limitations applicable to 42 U.S.C. § 1983 claims.   (Dkt. 14-4 at 7).   In response, Plaintiff argues that this claim is not time-barred because "false arrest is a continuing tort."   (Dkt. 29-2 at 21-23).   While a claim for false arrest may be a "continuing tort," that fact has no bearing on Plaintiff's claim for excessive use of force, which he alleges as part of his second claim for relief. (Dkt. 1 at ¶¶ 123-39).

It is well-settled that the statute of limitations for a claim pursuant to 42 U.S.C. § 1983 is three years.  *See Sherman v. Town of Chester*, 752 F.3d 554, 566 (2d Cir. 2014).   In his complaint, Plaintiff alleges that the deputies used excessive force against him on August 8, 2010.   (Dkt. 1 at ¶¶ 2, 59, 61-71).   Plaintiff did not file his complaint until February 25, 2014.   (Dkt. 1).   Because more than three years have passed between the date of the alleged use of excessive force and the date on which Plaintiff filed his complaint, to the extent Plaintiff's second cause of action asserts a claim for excessive use of force, it is time barred.

**C.    Plaintiff's Malicious Prosecution and False Arrest Claims**

Claims for malicious prosecution and false arrest may be brought pursuant to § 1983 because they implicate the Fourth Amendment's protection of an individual's

liberty interest with respect to criminal prosecutions. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 115-16 (2d Cir. 1995); *see also Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994) ("The tort of false arrest supports a claim against state police under section 1983 because it violates the Fourth Amendment."). Plaintiffs bringing such claims must meet the state law requirements for the underlying torts, *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010), and "show some deprivation of liberty consistent with the concept of 'seizure'" sufficient to implicate the Fourth Amendment, *Singer*, 63 F.3d at 116.

### 1.    Malicious Prosecution

Defendants argue that Plaintiff's malicious prosecution claim must be dismissed because the presumption of probable cause created by the grand jury indictment precludes any § 1983 claim for malicious prosecution. (Dkt. 14-4 at 4-7). Plaintiff responds that his complaint is "sufficient to rebut the presumption of fact of the indictment." (Dkt. 29-2 at 10-14).

"Under New York law, '[t]he elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice.' Liability for the tort of malicious prosecution also gives rise to liability under 42 U.S.C. § 1983." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983)). A claim for malicious prosecution accrues when the underlying criminal proceedings have been terminated. *Griffin v. Doyle*, No. 12-CV-4359(JS)(GRB), 2014 U.S. Dist. LEXIS 90087, at *12 (E.D.N.Y. June 30, 2014). Plaintiff's conviction was overturned on February 14, 2014

(Dkt. 1 at ¶ 99; Dkt. 32-2), and he filed his complaint on February 24, 2014 (Dkt. 1). Accordingly, his claims were asserted within the three-year statute of limitations.

Plaintiff has adequately pled the first element of a claim for malicious prosecution. The complaint alleges that Plaintiff was charged criminally, indicted, and tried in Ontario County. (Dkt. 1 at ¶¶ 72-74).

The adequacy of the pleading is not as clear with respect to the second element – termination of the underlying criminal prosecution in Plaintiff's favor. Defendants argue that the state court prosecution did not resolve in Plaintiff's favor, as the Appellate Division's ruling turned on a procedural issue and did not address the substantive merits of the criminal case. (Dkt. 34-1 at 7). In other words, Plaintiff was not acquitted – rather, a jury found him guilty but the conviction was overturned on procedural grounds.

"The Second Circuit has recognized that district courts analyzing the favorable termination element of malicious prosecution claims 'have reached varying results that are difficult to reconcile.'" *Wood v. Town of E. Hampton*, No. 08-CV-4197, 2010 U.S. Dist. LEXIS 104806, at *44 (E.D.N.Y. Sept. 30, 2010) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1486 (2d Cir. 1996)). Nonetheless, it is clear that the existence of a favorable termination should be determined according to state law. *Id.* (citing *Neal v. Fitzpatrick*, 250 F. Supp. 2d 153, 154 (E.D.N.Y. 2003)).

The New York Court of Appeals has explained that a criminal proceeding terminates in favor of the accused when "the proceeding cannot be brought again," such that "there can be no further proceeding upon the complaint of indictment, and no further prosecution of the alleged offense," *see Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195-96

(2000) (quotation omitted), or when "a judicial determination of the accused's innocence on the merits of the action has been made," *Ward v. Silverberg*, 85 N.Y.2d 993, 994 (1995); *see also MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (1996); *Hollender v. Trump Vill. Coop., Inc.*, 58 N.Y.2d 420, 425-26 (1983). In *Smith-Hunter*, the New York Court of Appeals clarified its holdings in *Ward*, *MacFawn*, and *Hollender*, noting that those cases "stand only for the proposition that dispositions inconsistent with innocence, like the ones in those cases, cannot be viewed as favorable to the accused." 95 N.Y.2d at 199. The court also noted that although those cases included language implying that dismissal must affirmatively indicate the innocence of the accused, "[t]hat language . . . was not necessary to the resolution of those cases. . . ." *Id.*

Here, the Appellate Division's decision explicitly states that "the judgment so appealed from is unanimously reversed as a matter of discretion in the interest of justice and on the law, and the indictment is dismissed and the matter is remitted to Ontario County Court for proceedings pursuant to CPL 470.45." (Dkt. 32-3 at 2). The Court concluded that "the evidence is legally insufficient to establish that the deputy's arrest of defendant was lawful. . . . Because the arrest was not authorized at its inception, the evidence is legally insufficient to support the conviction of assault, obstructing governmental administration, and resisting arrest . . . and reversal therefore is required." (*Id.* at 3).

Courts have held that cases that are dismissed on grounds of legal insufficiency do not terminate in a defendant's favor. *See Carrillos v. Inc. Vill. of Hempstead*, No. 11-CV-5775 (JFB)(SIL), 2015 U.S. Dist. LEXIS 22268, at *43-44 (E.D.N.Y. Feb. 20, 2015)

("It is well settled that a dismissal for facial insufficiency is inadequate to constitute a favorable termination for the purposes of plaintiff's malicious prosecution claim."); *MacFawn*, 88 N.Y.2d at 860 (plaintiff failed to state claim for malicious prosecution where the court did not reach the merits and the question of the plaintiff's guilt or innocence, but instead dismissed case on procedural grounds); *Hollender*, 58 N.Y.2d at 425-26 ("[I]t is only when [the] . . . final disposition is such as to indicate innocence that this burden [of favorable termination] is met.") (citations and internal quotation marks omitted). *See also O'Brien v. Alexander*, 101 F.3d 1479, 1486-88 (2d Cir. 1996) (following the rule articulated by the New York State Court of Appeals in *MacFawn* and *Hollender*); *cf. Smith-Hunter*, 95 N.Y.2d at 198 (dismissal without prejudice qualifies as final if it reflects "the formal abandonment of the proceedings by the public prosecutor").

The Court questions whether Plaintiff has sufficiently alleged the second element of a malicious prosecution claim. Nonetheless, the Court need not resolve that issue because even if Plaintiff was able to show a termination of the criminal case in his favor for purposes of a malicious prosecution claim, his complaint fails to allege facts that, taken as true, establish the third element – lack of probable cause. It is well-established that the existence of a grand jury indictment creates a presumption of probable cause. *Savino*, 331 F.3d at 72; *Manganiello*, 612 F.3d at 161-62. Plaintiff concedes that he was indicted by a grand jury. (Dkt. 1 at ¶ 74). Therefore, Plaintiff may rebut that presumption "*only* . . . by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72-73 (quoting *Colon*, 60 N.Y.2d at 83) (emphasis in original). For example,

a presumption of probable cause may be overcome "[w]here there is some indication . . .
that, as to a fact crucial to the existence of probable cause, the arresting officers may have
lied in order to secure an indictment, and a jury could reasonably find that the indictment
was secured through bad faith or perjury. . . ." *Manganiello*, 612 F.3d at 162 (internal
quotations and citation omitted).

Plaintiff's theory is that the deputies did not have probable cause to effectuate
Plaintiff's arrest because they did not witness the violation or have a warrant for his
arrest.   Plaintiff alleges that pursuant to New York Criminal Procedure Law
§ 140.10(1)(a), the police are not authorized to arrest a person for a violation-level
offense that did not take place in the officer's presence (Dkt. 1 at ¶ 27) and, because the
complaint taken against Plaintiff earlier that day was for harassment in the second degree,
a non-criminal, violation-level offense (*id.* at ¶ 22), the deputies did not have probable
cause to arrest Plaintiff.  Plaintiff contends that the deputies' insistence throughout his
prosecution that they executed a lawful arrest, demonstrates the requisite fraud, perjury,
or bad faith sufficient to rebut the probable cause created by the indictment.  In other
words, because the deputies' position concerning the lawfulness of the arrest was
ultimately rejected by the Appellate Division, Plaintiff posits that this translates to a lack
of probable cause for the underlying indictment.

The fact that the Appellate Division found that the deputies did not lawfully
effectuate Plaintiff's arrest does not rebut the presumption of probable cause created by
the grand jury indictment, even where the underlying arrest was ultimately determined to
be procedurally defective.  In fact, the presumption of probable cause created by the

grand jury indictment in this case is only further buttressed by the fact that the trial court apparently believed that Plaintiff's arrest was lawful and a petit jury convicted Plaintiff of the charges. It was ultimately determined on appeal that there was a technical error with Plaintiff's arrest, but that does not translate to the necessary fraud, perjury, suppression of evidence, or other bad faith conduct necessary for rebutting the probable cause created by the grand jury indictment.

Plaintiff's focus on the fact that the officers violated N.Y. C.P.L. § 140.10(1)(a) reveals his fundamental misunderstanding of a malicious prosecution claim. The Appellate Division's finding that the deputies violated N.Y. C.P.L. § 140.10(1)(a) does not mean that the indictment was procured by fraud, perjury, the suppression of evidence, or bad faith. A malicious prosecution claim is based on an underlying flaw in the grand jury process and subsequent prosecution due to intentional misconduct that transcends legal error or incorrect interpretation of the law. For example, if Plaintiff alleged that the deputies fabricated the report initially communicated by Plaintiff's common-law wife about a domestic disturbance in order to gain entry into Plaintiff's house, and then they persisted with this fabrication throughout Plaintiff's prosecution, that may rise to the requisite level of conduct sufficient to rebut the grand jury's probable cause determination. But Plaintiff does not make any such allegations. Rather, he incorrectly equates the officers' technical legal violation associated with his arrest with the requisite fraudulent conduct needed to rebut the probable cause created by the grand jury indictment.

Plaintiff also conflates an alleged lack of probable cause for his arrest with an alleged lack of probable cause for his prosecution. Again, the probable cause for the prosecution is evidenced by the grand jury indictment, which exists independently from the underlying arrest. Moreover, even if a lack of probable cause to arrest could rebut the probable cause created by the grand jury indictment, so as to serve as a viable basis for a malicious prosecution claim, "the fact that an arrest violated N.Y. C.P.L. § 140.10(1)(a) does *not* mean that the arrest lacked probable cause under the Fourth Amendment." *Williams v. Schultz*, No. 9:06-CV-1104 (DNH/GHL), 2008 U.S. Dist. LEXIS 112729, at *14-15 (N.D.N.Y. Sept. 22, 2008) (emphasis in original), *adopted*, 2008 U.S. Dist. LEXIS 82393 (N.D.N.Y. Oct. 16, 2008); *see also Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 504 (N.D.N.Y. 2010) ("the fact that a police officer has violated Section 234-16(E) of the Municipal Code (or even some New York State Statute) does *not* mean that his arrest lacked probable cause under the Fourth Amendment") (emphasis in original); *Hotaling v. LaPlante*, 167 F. Supp. 2d 517, 522 (N.D.N.Y. 2001) ("There is no requirement under the Fourth Amendment that a police officer personally witness the conduct upon which he or she relies to establish the existence of probable cause.").[1]

---

[1]   Contrary to Plaintiff's argument, the Appellate Division's determination does not preclude this Court from finding that the arrest was constitutionally sufficient. Not only are the issues different, but the County Defendants are not in privity with the prosecuting agency for purposes of any collateral estoppel argument. Plaintiff's criminal proceeding was handled by the Ontario County District Attorney's office. "[T]he New York Court of Appeals has held that the relationship between a municipality and the district attorney is not one of privity." *Jenkins v. City of N.Y.*, 478 F.3d 76, 85 (2d Cir. 2007) (explaining that the defendant detectives, city employees, were not in privity with the State); *see also Brown v. City of N.Y.*, 60 N.Y.2d 897, 898-99 (1983) (municipality and district attorney are not in privity).

Plaintiff concedes that the deputies took a complaint from Plaintiff's wife that he pushed her during an argument (Dkt. 1 at ¶¶ 22-25); deputies were dispatched back to Plaintiff's home later that evening (*id.* at ¶ 32); Plaintiff's wife was standing outside of Plaintiff's residence when the deputies arrived (*id.* at ¶ 37); and Plaintiff was argumentative with deputy Edington when she entered the house (*id.* at ¶¶ 53, 59). These allegations support the presumption of probable cause to arrest Plaintiff. *See De Santis v. City of N.Y.*, No. 10 Civ. 3508 (NRB), 2011 U.S. Dist. LEXIS 99126, at *21-22 (S.D.N.Y. Aug. 29, 2011) ("Statements by the putative victim of the crime to police are ordinarily sufficient in themselves to establish probable cause, unless there is reason to doubt the victim's veracity.").

Plaintiff alleges that the deputies "completed official accusatory paperwork and criminal complaints and gave sworn testimony against Mr. Laboy on several occasions. . . ."[2] and that Plaintiff was indicted and tried on his crimes "with full cooperation and involvement of the deputies." (Dkt. 1 at ¶¶ 72-73). However, Plaintiff does not allege

---

[2]     To the extent Plaintiff attempts to allege that the officers gave false testimony before the grand jury, such a claim fails as a matter of law. In *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), the Supreme Court of the United States held that grand jury witnesses are entitled to absolute immunity for a 42 U.S.C. § 1983 claim based on their testimony. *Id.* at 1506. "Following [*Rehberg*,] district courts in this Circuit have held that plaintiffs cannot use an officer's allegedly false grand jury testimony to rebut the presumption of probable cause arising from the indictment." *Bonds v. City of N.Y.*, No. 12-CV-1772 (ARR) (MDG), 2014 U.S. Dist. LEXIS 74185, at *22-23 (E.D.N.Y. May 30, 2014) (collecting cases); *see also Duncan v. Cardova*, No. 10cv8089 (GBD) (DF), 2014 U.S. Dist. LEXIS 119597, at *21 (S.D.N.Y. Aug. 22, 2014), *adopted*, 2014 U.S. Dist. LEXIS 143442 (S.D.N.Y. Sept. 26, 2014) ("An arresting officer's grand jury testimony alone, though — even if false — cannot be used by a plaintiff to rebut a presumption of probable cause arising from an indictment. . . .").

that the deputies fabricated evidence or otherwise "tricked" the grand jury into indicting

Plaintiff. *See Williams v. City of N.Y.*, No. 10-cv-2676 (JG) (LB), 2012 U.S. Dist. LEXIS

19207, at *8 (E.D.N.Y. Feb. 15, 2012) (Because "[t]here is nothing in the record

indicating what evidence was presented to the grand jury, let alone that any of it was

fraudulent, fabricated or otherwise the product of bad-faith conduct. . . [,] [Defendant]

has not rebutted the presumption of probable cause"); *Lewis v. City of N.Y.*, 12-CV-2836

(RRM) (RML), 2013 U.S. Dist. LEXIS 180202, at *8 (E.D.N.Y. Dec. 24, 2013)

(dismissing plaintiff's malicious prosecution claim because "Plaintiff allege[d] nothing

about how his indictment was procured; he allege[d] only that Defendant Officers

charged him without admissible evidence and prosecuted him without probable cause."),

*aff'd*, 591 F. App'x 21 (2d Cir. 2015).

Plaintiff's allegations, accepted as true, might support the conclusion that the

deputies did not follow proper protocol when they effectuated his arrest.  However, "[an]

alleged failure to conduct further investigation or apply all procedures that could have

been followed does not amount to fraud, bad faith or suppression of evidence and is

insufficient to overcome the presumption [of probable cause]."  *Gil v. Cnty. of Suffolk*,

590 F. Supp. 2d 360, 370 (E.D.N.Y. 2008); *see also Stukes v. City of N.Y.*, No. 13-CV-

6166 (NGG) (VVP), 2015 U.S. Dist. LEXIS 33223, at *16 (E.D.N.Y. Mar. 17, 2015)

(while "a police officer's fabrication and forwarding to prosecutors of known false

evidence [amounts to] an unacceptable corruption of the truth-seeking function of the

trial process . . . [t]he simple act of not disclosing to the grand jury all evidence that could

potentially benefit the accused at a grand jury hearing does not necessarily rise to the level of bad faith.") (internal quotations and citations omitted).

Furthermore, the complaint lacks sufficient factual allegations to support any claim that Plaintiff's prosecution was motivated by malice – the requisite fourth element of any malicious prosecution claim. A showing of malice requires "'that the defendant . . . commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)); *see also Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) ("The element of malice implicates an evil or unlawful purpose."); *Nieves v. Cnty. of Monroe*, 761 F. Supp. 2d 48, 52-53 (W.D.N.Y. 2011) (dismissing malicious prosecution claim in part because "plaintiff . . . failed to plead the malice that is a cornerstone and requirement of pleading, and proving, a malicious prosecution claim. Conclusory or speculative allegations are insufficient: plaintiff must *specifically* allege that the named defendants acted with malice.") (emphasis in original).

Finally, even if Plaintiff had adequately pleaded a malicious prosecution claim against Defendants, the individual Defendants would be protected by the doctrine of qualified immunity. *See Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 226 (W.D.N.Y. 2012) (law on whether failure to comply with N.Y. C.P.L. § 140.10 amounts to a constitutional violation "is far from established," and so "the officers are protected by the doctrine of qualified immunity, which provides that an officer cannot be held liable under § 1983 if his actions did not violate clearly established law.").

- 23 -

2.    **False Arrest**

"To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.' As with malicious prosecution, liability for false arrest also gives rise to liability under 42 U.S.C. § 1983." *Savino*, 331 F.3d at 75 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). A claim for false arrest in violation of 42 U.S.C. § 1983 is subject to a three-year statute of limitations.[3]

Although Defendants did not move for dismissal of Plaintiff's false arrest claim on statute of limitations grounds, Plaintiff has moved for partial summary judgment on his false arrest claim (Dkt. 28-4 at 12-19), and Plaintiff himself raises the issue in his opposition to Defendant's motion to dismiss (Dkt. 29-2 at 21-23). Accordingly, the Court may search the record and grant Defendants summary judgment on this ground. *See Sawyer v. Wight*, 196 F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (courts "may discretionarily choose to search the record of their own accord" to "develop a factual record on which to decide [summary judgment] motions").

Plaintiff is correct that a claim for false arrest is an "ongoing tort." (Dkt. 29-2 at 21-23). However, only those events occurring pre-arraignment are properly considered part of Plaintiff's false arrest claim, as opposed to his malicious prosecution claim. As

---

[3]    Plaintiff contends in his motion papers that he has also alleged a *Payton* violation. *See Payton v. New York*, 445 U.S. 573 (1980). Plaintiff has failed to allege any such claim in his complaint.   In any event, any such claim would be barred by the applicable three-year statute of limitations for 42 U.S.C. § 1983 claims.

explained by the United States Supreme Court, a false arrest or false imprisonment claim "consists of detention without legal process. . . ." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). As a result, the false arrest ends once the defendant is arraigned and subject to legal process, and thereafter any claim of unlawful detention forms part of the entirely separate tort of malicious prosecution. *Id.* at 389-390. "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." *Id.* at 390 (quotation and citation omitted); *see also Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).

Exhibit B attached to Plaintiff's motion for summary judgment and motion to dismiss indicates that Plaintiff was indicted on the charges against him on September 1, 2010 (Dkt. 30-2 at 6-8, 10), and that the case was in discovery by October 2010 (*id.* at 11-42). Accordingly, Plaintiff's claim for false arrest accrued at the latest by September 2010, more than three years before he filed his federal complaint on February 25, 2014. (Dkt. 1). As a result, Plaintiff's claim for false arrest must be dismissed as time-barred by the applicable statute of limitations.

In addition, for the reasons discussed previously with regard to Plaintiff's malicious prosecution claim, the false arrest claim would be barred even if the claim was timely. That is, Plaintiff alleges that he was falsely arrested because the arrest was made in violation of N.Y. C.P.L. § 140.10. However, a violation of N.Y. C.P.L. § 140.10 does not amount to a constitutional violation, *see Mikulec*, 909 F. Supp. 2d at 226; *Picciano*,

723 F. Supp. 2d at 504; *Hotaling*, 167 F. Supp. 2d at 522; *Williams*, 2008 U.S. Dist. LEXIS 112729, at *14-15.

**D.     Plaintiff's *Monell* Claim**

Plaintiff's third cause of action is for *Monell* liability based on deliberately indifferent policies, practices, customs, training, and supervision. (Dkt. 1 at ¶¶ 140-157). Defendants argue that Plaintiff's *Monell* claim must be dismissed because he has not adequately pleaded a policy or custom. (Dkt. 14-4 at 8-10). As an initial matter, Plaintiff's *Monell* claim must be dismissed because he has failed to allege an underlying constitutional violation. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (*Monell* does not provide an independent separate cause of action against a municipality; rather, "it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation") (emphasis in original).     Accordingly, Plaintiff's *Monell* claim cannot exist independently without an underlying constitutional violation.

Even if Plaintiff had alleged a constitutional violation, he has not plausibly alleged a claim for municipal liability. "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).     In order to maintain a 42 U.S.C. § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 694 (1978).     To successfully state a claim for *Monell*

liability, a plaintiff must "make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)).

It is well-settled that a plaintiff's conclusory allegations, which merely recite the elements for stating a *Monell* claim, are insufficient to state a claim for municipal liability. *See Genovese v. Town of Southhampton*, 921 F. Supp. 2d 8, 25 (E.D.N.Y. 2013) ("[V]ague and conclusory assertions that the Town should have known that officers would encounter these situations, and that the Town did not adequately train officers to properly respond . . . without any actual supporting [allegations] . . . , are insufficient to adequately plead a *Monell* claim."). Here, Plaintiff makes conclusory allegations that the County and Sheriff Provero developed and maintained policies, procedures, customs and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, including by enacting a policy and practice to effectuate arrests for violations that were not committed in officers' presence and without probable cause. (Dkt. 1 at ¶¶ 82-83, 148-151). These allegations fail to state a claim for *Monell* liability against the County of Ontario because they are conclusory and not supported by facts. Moreover, for the same reason that a violation of N.Y. C.P.L. § 140.10 standing alone cannot support an underlying constitutional violation, it similarly cannot serve as the basis for a *Monell* claim.

## **CONCLUSION**

For the foregoing reasons, judgment is granted in favor of Defendants and Plaintiff's complaint is dismissed in its entirety.   The Clerk of the Court is directed to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:  May 4, 2015
       Rochester, New York